UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LUIS ANGEL VELEZ,

                      Plaintiff,

     v.                                    **DECISION AND ORDER**
                                                          11-CV-881S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

       1.       Plaintiff, Luis Angel Velez, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Velez alleged that he has been disabled since July 10, 2008 due to cervical pain, low back pain, thoracic pain, left arm pain, berderline intellectual functioning, a generalized pain disorder, hypertension, knee pain, and obesity, and that these impairments render him unable to work. He therefore asserts that he is entitled to disability insurance benefits and supplemental security income (collectively "benefits") under the Act.

       2.       Velez filed an application for benefits under Titles II and XVI of the Act on March 10, 2009, alleging an inability to work since July 10, 2008, when he was injured in an automobile accident. The Commissioner of Social Security ("Commissioner") denied Velez's initial application and, as a result, he requested an administrative hearing. A hearing was held on March 30, 2011, before Administrative Law Judge ("ALJ") Scott Staller, sitting in Maryland. Velez appeared via video teleconference from New York, along with counsel, and testified. The ALJ considered the case *de novo*, and on April 29, 2011, he issued a decision denying Velez's application for benefits. Velez filed a request for review with the Appeals Council, but the Council denied his request on September 23,

2011. Velez filed the current civil action on October 20, 2011, challenging Defendant's final decision.[1]

3. On April 16, 2012, the Commissioner and Velez each filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing on the motions concluded on June 4, 2012, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is denied, and Velez's motion is granted in part and denied in part.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano*,* 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen,

---

[1] The ALJ's April 29, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); *see also* Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Velez has not engaged in substantial gainful activity since July 10, 2008 (R. at 21);[2] (2) his cervical pain, low back pain, thoracic pain, left arm pain, borderline intellectual functioning, generalized pain disorder, hypertension, knee pain, and obesity are "severe" impairments within the meaning of the Act (R. at 21); (3) his impairments do not meet or medically equal any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (R. at 21); (4) he retains the residual functional capacity to perform light work with certain postural limitations[3] (R. at 23-24); (5) he is unable to perform

---

[2] Citations to the underlying administrative record are designated as "R."

[3] In support of this finding, the ALJ explained that Velez exhibits "decreased range of motion in [his] thoracic and lumbar spine regions" but that the degenerative changes in his low back, as well as his Class II obesity, are accounted for by limiting him to light work with additional postural limitations. (R. 24, 26.) "The claimant can occasionally climb, balance, stoop, kneel, crouch or crawl. The claimant can frequently reach (including overhead), handle, or finger with both upper extremities. The claimant is able

4

any past relevant work (R. at 26); and (6) at age 32, he is a "younger individual" with a limited education who retains the residual functional capacity to perform jobs that exist in significant numbers in the national economy (R. at 27). Ultimately, the ALJ concluded that Velez was not under a disability as defined by the Act from July 10, 2008 through the date of his decision. (R. at 26-27.)

10. Velez contends that, in light of his low IQ scores, the ALJ erred when he failed to find Velez disabled due to "mental retardation." "Mental retardation" is listed as a *per se* disability under 20 C.F.R. Pt. 404, Subpt. P, App'x 1 Part A, § 12.00. Establishing the applicability of this listing is a two-part process. Per SSA regulations, a claimant must first demonstrate:

> significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

*Id.* Listing 12.05; *see* MacMillan v. Astrue, 2009 U.S. Dist. LEXIS 125597, at *17 (N.D.N.Y. Nov. 17, 2009) (courts have found evidence that a claimant attended special education classes, failed to complete high school, or had difficulties in reading, writing, or math sufficient to infer deficits in adaptive functioning prior to age 22) (citations omitted). Once this diagnostic criteria is met, a claimant must establish that his limitations are sufficiently severe by meeting one of four sets of criteria listed in subsections A through D of 12.05. Here, the ALJ examined each of these subsections and concluded that none apply. Velez

---

to remember and carry out simple instructions; make judgments on simple work related decisions; interact appropriately with supervisors and workers in a routine work setting; respond to usual work situations and to changes in a routine work setting; maintain concentration and attention for two hour segments over an eight hour period; and complete a normal workweek without excessive interruption from psychologically or physically based symptoms." (R. at 23.)

5

challenges the ALJ's finding with respect to 12.05C, and first argues that his impairments meet, or alternatively, medically equal, the 12.05C requirements of:

> [a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

The record shows that Velez was enrolled in special education classes at a public school and completed 9th grade before dropping out. (R. 46, 227.) He has not obtained a GED. (R. 64.) His school's Committee on Special Education recorded the results of a WISC[4] IQ test administered to him at age six as 72. (R. 255.) Another WISC IQ test, administered at age twelve, shows an IQ score of 78. (Tr. 254.) After Velez applied for benefits, he was examined by a licensed psychologist, Dr. Baskin. She administered a standardized intelligence test for adults, the VAIS-IV, which resulted in the following scores: full scale IQ 63, verbal comprehension 72, perceptual reasoning 69, working memory 71, and processing speed 62. (R. 257-58.) Dr. Baskin opined that the testing results "are considered to be a valid and reliable estimate of current functioning," but due to certain of Velez's behaviors, "may be a lower estimate of his true cognitive abilities." (R. 257.) She noted that Velez's style of responding was inconsistent, he worked slowly, did not appear to make a concerted effort to do his best, and appeared someone lethargic, which "may have had a negative impact on his Full Scale IQ." (R. 257-58.) Dr. Baskin then stated her belief that Velez's cognitive abilities are better represented by his verbal comprehension index–*i.e.*, the score of 72. (R. 258.) A standardized achievement test revealed reading, decoding, and spelling abilities at a third grade level, and arithmetic

---

[4] The Wechsler Intelligence Scale for Children is a measure of general cognitive ability.

commensurate with a middle school level. (R. 257.)

In his decision, the ALJ afforded significant weight to Dr. Baskin's assessment (R. 26) and stated:

> In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. [T]he claimant does not have a valid full scale IQ of 60 through 70; his full scale IQ of 63 obtained during the July 16, 2008 independent organicity evaluation was considered invalid by the examiner due to a perceived lack of effort. (R. 22.)
>
> In terms of the claimant's borderline intellectual functioning, the undersigned finds the extent of his limitations not as severe as alleged. School records from when the claimant was a teenager indicate that his IQ is in the 70s.
>
> According to Dr. Baskin, the claimant's past IQ testing showed a Full Scale IQ of 78 was more likely a better indicator of the claimant's intellectual abilities. (R. 25.)
>
> Dr. Baskin concluded that the claimant's full-scale IQ score is in the mid-70s . . . . (R. 26.)

This Court cannot conclude that the ALJ's assessment as to the first prong of Listing 12.05C is based on substantial evidence. First, the Baskin report, to which ALJ ascribes significant weight, is internally inconsistent. After confirming she considers the test results to be "valid and reliable," Dr. Baskins recounts evidence of Velez's possible malingering and suggests his full scale IQ is likely higher than the test results show. But, even assuming Dr. Baskin's observations are correct, it is unclear whether that would place Velez's current IQ within, or above, the 60 to 70 range. Contrary to the ALJ's statements, Dr. Baskin at no time concluded that Velez has a full scale IQ of 78, or even in the mid-70s.

7

At most, she states her belief that a verbal comprehension index[5] of 72 better represents his abilities. To the extent the ALJ may have relied on Velez's childhood test results to draw conclusions about his current IQ, such reliance was misplaced.

> Generally, the results of IQ tests tend to stabilize by the age of 16. . . . . IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 and above.

20 C.F.R. Pt. 404, Supt. P, App. 1 § 112(D)(10). There simply is no basis from which the ALJ could reasonably conclude that testing done more than 20 years earlier, while Velez was under 16 years of age, is substantial evidence of his current functioning. While courts have found it appropriate to assume that IQ tests administered *after* age 22 accurately reflect a claimant's IQ *prior* to age 22, *see, e.g.,* Goldthrite v. Astrue, 2010 U.S. Dist. LEXIS 75241, at *10 (W.D.N.Y. July 27, 2010) (citation omitted), the regulations made clear that IQ tests prior to the age of 16 have a limited shelf-life. Therefore, it appears there is no basis to assume a stable IQ well into adulthood based solely on testing done before the age of 16.

Courts generally accept that an ALJ may reject an IQ score as invalid when it is inconsistent with the record. Reid v. Astrue, 2010 U.S. Dist. LEXIS 62689, at *16 (N.D.N.Y. June 23, 2010). As such, the Court finds no error in the ALJ's decision to reject a full scale IQ of 63; Dr. Baskin herself called the finding into question and earlier testing, while not determinative, suggests a somewhat higher IQ level. The problem with the ALJ's rejection, however, is that it left him with a record devoid of any valid evidentiary basis by

---

[5] This index is one portion of testing that is taken into account to determine a verbal IQ score. Dr. Baskin did not provide a separate verbal IQ or performance IQ score.

which to assess Velez's current cognitive functioning. As such, his determination that Velez has a current IQ score above 70 is not based on substantial evidence.

11. Velez argues, alternatively, that even if he does not meet the 12.05C criteria, the ALJ erred in failing to consider whether his impairments medically equal that listing. An impairment is medically equal "to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). If a claimant lacks "one or more of the findings specified" or "exhibit[s] all of the findings" but not at the specified severity, then his impairments will be found medically equivalent if "other findings related to [his] impairment . . . are at least of equal medical significance to the required criteria." 20 C.F.R. §§ 404.1526(b)(1)(i)-(ii).

Medical equivalency with regard to Listing 12.05C is addressed in POMS DI 24515.056(D)(1)(c)[6]:

> Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that *a medical equivalence determination would very rarely be required*. However, slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

(emphasis added).

It is quite clear that an equivalency determination is not required in all cases. Velez has not pointed to anything in the record to indicate this is an instance in which such a determination is warranted. Nevertheless, based on the deficiencies already noted, the

---

[6] Social Security Administration's Program Operations Manual System, available at: https://secure.ssa.gov/poms.nsf/home!readform.

9

ALJ's ultimate determination that the requirements of Listing 12.05C are not met is not supported by substantial evidence.

12. Velez next maintains the ALJ erred in failing to find that he meets the second prong of the 12.05C test. In this regard, the ALJ merely stated his conclusion "that the claimant does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function." (R. 22.) The ALJ provides no accompanying explanation or analysis. As Velez correctly notes, the ALJ concluded at step two that Velez has several severe impairments in addition to his borderline IQ, including cervical pain, low back pain, thoracic pain, left arm pain, a generalized pain disorder associated with a general medical condition, hypertension, knee pain, and obesity. (R. 21.) At steps four and five, the ALJ concluded that Velez's impairments limit him to light, unskilled work with additional postural limitations, and prevent him from performing his past relevant work as a school bus driver. (R. 23, 26.)

The test for evaluating whether a claimant's impairment imposes "an additional and significant work-related limitation of function" is the same test used at step two of the sequential evaluation to determine whether an impairment is "severe." MacMillan v. Astrue, 2009 U.S. Dist. LEXIS 125597, at *20-21. The regulations direct an ALJ to "assess the degree of functional limitation the additional impairment[] imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment[], as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A). Thus, the proper test for evaluating an additional impairment under Listing 12.05(C) is the same test used at step two of the sequential evaluation to determine whether an impairment is "severe." See 20 C.F.R. §§ 404.1520(c),

416.920(c); accord Baneky v. Apfel, 997 F. Supp. 543, 546 (S.D.N.Y. 1998) ("This Court holds that the correct standard for determining whether an "additional" impairment imposes a "significant" work-related limitation under section 12.05(C) is the severity test . . ."). Because the ALJ found that Velez has a number of physical limitations that are severe, the second prong of Listing 12.05C is met. MacMillan, 2009 U.S. Dist. LEXIS 125597, at *21. Accordingly, Velez's motion for judgment on the pleadings is granted as to the second prong of Listing 12.05C.

13.    Finally, Velez maintains the ALJ erred in failing to clarify the record relative to his mental impairments and to fully develop the record as to his physical impairments. Since Social Security proceedings are non-adversarial in nature, the ALJ has a "'duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir .2004) (*quoting* Seavey v. Barnhart, 276 F.3d 1, 8 (1st Cir. 2001)). The ALJ is under this obligation even when the claimant is represented by counsel. *See* Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) ("[The ALJ [must] affirmatively develop the record ... even when, as here, the claimant is represented by counsel.") (quotations and citations omitted)). Velez argues that his case must be remanded so the identified errors can be addressed, and this Court agrees.[7]

With regard to cognitive functioning, the ALJ chose to disregard Dr. Baskin's determination that the results of the IQ were valid and reliable because of her stated belief that Velez may have been malingering. In the face of such ambiguity, the ALJ should have

---

[7] Reversal and remand for calculation of benefits is warranted only when there is persuasive proof of disability in the record and further development of the record would not serve any purpose. See Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999). This Court already has determined the record does not contain persuasive proof of Velez's level of cognitive functioning as of the alleged disability onset.

sought clarification from Dr. Baskin and/or otherwise supplemented the record. This is particularly so where, as determined above, the record does not otherwise contain persuasive evidence regarding Velez's IQ. A valid assessment of cognitive function is critical to the determination of whether Velez had a "verbal, performance, or full scale IQ of 60 through 70" as of his alleged disability onset. Listing 12.05C.

14. Velez also contends that the record does not include evidence of his treatment with two doctors he mentioned at his hearing—a primary care physician who diagnosed him with carpal tunnel syndrome and a pain management specialist. (R. 42-43, 54, 55-57.) According to Velez, recognition of his carpal tunnel syndrome as a severe impairment could impact the ALJ's residual functional capacity assessment. The Court agrees. If, on remand, the ALJ concludes that Listing 12.05C is not met, the residual functional capacity assessment will be determinative of Velez's ability to engage in gainful employment. Should that be the case, the ALJ is directed to fully develop the record as to Velez's alleged physical impairments. If, on the other hand, the ALJ finds Velez is *per se* disabled due to mental retardation, there will be no need to revisit the residual functional capacity assessment, and any gap that may exist in the record will have been harmless error.

15. Upon careful examination, the Court finds that the administrative record, as it currently stands, does not contain persuasive evidence of Velez's level of cognitive functioning. Thus, the ALJ's determination of not disabled under Listing 12.05 C was not supported by substantial evidence. On remand, the ALJ should seek clarification from Dr. Baskin or otherwise supplement the record with regard to Velez's mental impairment, and explicitly identify the information relied on in assessing the first prong of 12.05C. The ALJ

also should fully develop the record with regard to treating physicians identified at the hearing, if a residual functional capacity assessment is required.

\* \* \* \* \*

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED in part and DENIED in part;

FURTHER, that the decision of the ALJ is REMANDED to the Commissioner of Social Security for further proceedings consistent with the above;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: January 26, 2013
       Buffalo, New York

                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                      Chief Judge
                                          United States District Court